### DETERMINED IN THE

# SUPREME COURT

#### OF

# WASHINGTON

[No. 16766. Department Two. May 1, 1922.]

## J. E. KELLY, *Appellant*, v. C. J. MOSS, *Respondent*.[1]

PARTNERSHIP (14)—RELATION—EXISTENCE—EVIDENCE. Findings that a partnership in a farm lease did not exist between a father and his son, since deceased, are sustained, where it appears that the lease was taken each year in the name of the deceased, all bills contracted, the bank account carried, all crops insured and warehouse receipts taken in the name of the deceased, persons dealing with the son did not know of the partnership, the deceased received over $34,000 as the tenant's share of the crops for three years, and the father made no demand for his share until after the death of his son.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered December 6, 1920, dismissing an action to establish a partnership and for an accounting, tried to the court. Affirmed.

*Sharpstein, Smith & Sharpstein* and *Gose & Crowe,* for appellant.

*J. H. Raley, J. C. Hurspool,* and *W. G. Coleman,* for respondent.

HOLCOMB, J.—A vast mass of testimony and documents are presented by appellant in this case in an attempt to prove that he and his deceased son, J. E. Kelly, Jr., were copartners under an oral agreement

[1]Reported in 206 Pac. 941.

in farming for three years, commencing in the spring of 1914, a large farm in Umatilla county, Oregon, leased by one Harris to the son. Respondent denied that such copartnership existed, and on the facts the trial court so decided.

Testimony of several witnesses and many facts and circumstances are analyzed by appellant to convince us that the facts preponderated to show the copartnership, and that the trial court erred. Without unnecessarily and unprofitably narrating the evidence, a few facts and circumstances are significant.

Each year of the tenancy, the lease (on a crop rental) was taken, without objection on the part of appellant, in the name of the deceased. Accounts were incurred with merchants and others by the deceased in his own name, and none of the merchants or others ever knew that appellant and deceased were partners in farming the Harris land. The bank account was kept in the name of the deceased. During all of the three years of the farming operations no objection was made to the system of doing business. All the crops grown on the Harris land were insured by deceased in his own name, premiums paid by him, warehouse receipts taken in his own name, and the crops sold and the payment therefor taken in his own name.

The son was in bad health for several years and died March 20, 1919. The farming operations on the Harris place ended in the fall of 1917. During the three years of farming the son received in all over $34,000 for his tenant's share of the crops. Knowing his son's ill health and the large returns for his share of the crops, appellant never demanded a division or accounting until after the death of his son. Of course, the lips of the son being sealed by death, the lips of appellant are sealed by statute. But it is more than passing strange

that appellant could not or did not take some steps in the presence of or through the intervention of a third person to assert his claim against his son while he was yet alive, knowing his condition, and under all the circumstances and having no writings between them. Two other sons testified that they heard the arrangements made between their father and brother in February, 1914, more than a month before the lease of the land was secured from Harris, that they were to be "partners" in farming the Harris land. Two other sons of appellant testified that they never, during all the time the deceased farmed the land nor until his death, heard their father claim or mention a copartnership therein. The trial court evidently disregarded the evidence of the sons testifying that they heard a partnership agreed to long prior to the leasing. Although there is evidence tending to show large indebtedness owing appellant, that indicates no more than the relation of debtor and creditor, in the absence of sufficient evidence to show an agreement of copartnership.

Taken all in all, after a painstaking examination of the testimony and documents, we are unable to conclude that the facts preponderate contrary to the decision of the trial court.

Judgment affirmed.

PARKER, C. J., MAIN, MACKINTOSH, and HOVEY, JJ., concur.